IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH BURKYBILE, ) | |
| ) | |
| Plaintiff, ) | No. 04 C 4932 |
| ) | |
| vs. ) | Chief Judge Holderman |
| ) | |
| MITSUBISHI MOTORS CORPORATION, ) | |
| a foreign corporation, MITSUBISHI MOTOR ) | Magistrate Judge Cole |
| MANUFACTURING OF AMERICA, INC., ) | |
| a foreign corporation, AMAKI IRON WORKS ) | |
| CO., LTD., a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Mr. Burkybile has moved for entry of an order compelling defendants to answer supplemental discovery consisting of requests to admit and requests to produce documents. The defendants have responded by seeking a protective order precluding discovery from their non-testifying expert.

## I.
## BACKGROUND

On February 17, 2004, the plaintiff was injured when his 1995 Mitsubishi Eclipse GS left the road and struck a utility pole. The question is whether the left, lower, lateral control arm ball joint was separated as a result of the collision or separated causing the collision. Plaintiff filed suit on May 30, 2004, and, after discovery had closed, was granted leave to amend his complaint to add Count IV, which charged "Negligent Recall" in connection with the 1995 Mitsubishi Eclipse and other vehicles, which had as its subject matter the ball joint and boot device that is the subject of the instant case. The court also granted plaintiff's motion to reopen and extend discovery. Then, on

March 16, 2006, the court adopted the plaintiff's proposed new schedule for discovery, ordering discovery closed by August 25, 2006.

Thereafter, the plaintiff tendered a "Supplemental Request to Produce and a Request to Admit Certain Facts." The first of the three categories of requested documents consisted of warranty claim information for certain recalled vehicles. (*Motion to Compel*, Ex. 2, ¶¶ 1-3). The second sought any documentation of comments made by the president of Mitsubishi and Mitsubishi's quality control officer at a February 15, 2001 news conference regarding a vehicle recall campaign that covered front suspension parts. (*Id.*, ¶ 4). The plaintiff also requested admissions regarding the February 2001 statements of Mitsubishi's president and quality control officer. (*Motion to Compel*, Ex. 3). The third category pertained to defendants' retained experts, Tandy Engineering and Michael Holcomb. (*Motion to Compel*, Ex. 2, ¶¶ 5-7).

Tandy Engineering purchased and, according to plaintiff, modified a demonstration vehicle, and evaluated engineering issues regarding the ball joints. Although neither party elaborates to any extent on this exercise, the idea was apparently to simulate the wear that plaintiff's Eclipse had incurred – both the test vehicle and plaintiff's had over 100,000 miles on them. (*Motion to Compel*, ¶ 7; *Defendants' Motion for Protective Order*, at 1-2, 5). Defendants expert witness – their *testifying* expert witness – Mr. Holcomb, then utilized the vehicle in his testing. The document request – as well as a subpoena to Tandy Engineering – sought information on the test vehicle's history, the modifications that were made, the parts that were changed, and any tests that were performed. The plaintiff also served a subpoena on Tandy Engineering for documents relating to its work with the test vehicle. (*Motion to Compel*, Ex. 4).

The defendants objected to all of these the discovery requests. There was the predictable and

inadequate objection that the requests were "overly broad, unduly burdensome, unreasonable as to time and scope, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," and that they were "vague, ambiguous, and over broad." The defendants also complained that the requests referred to five-year-old statements made by then-employees. (*Motion to Compel*, Exs. 5-10). Finally, the defendants contended that the requests went "beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of defendants' experts." (*Id.*). There was apparently no response to the subpoena to Tandy Engineering, other than the defendants' motion for a protective order.

Under Rule 26(c), Federal Rules of Civil Procedure, a party seeking a protective order must show "good cause." In cases where a party seeks an order precluding discovery from an expert it does not intend to call as a witness, courts have found the moving party's initial showing sufficient where it can demonstrate that the expert was hired in anticipation of litigation but will not be testifying. *See* Rule 26(b)(4)(B). It then falls to the other party to demonstrate exceptional circumstances requiring discovery. *See Eliasen v. Hamilton*, 111 F.R.D. 396, 402 (N.D.Ill. 1986); *Brill-Edwards v. Ryder Truck Rental, Inc.*, Nos. 01-915, 01-1768, 2003 WL 23511733, *2 (D.Conn. Jan. 24, 2003); *Industrial Maritime Carriers, Inc. v. PT (Persero) Inka*, 179 F.R.D. 153, 154 (E.D.Pa. 1998).

The parties met twice, pursuant to Local Rule 37.2, to attempt to resolve their discovery dispute. Defendants indicated they would stand on their objections in the Request to Produce and the Request to Admit. When plaintiff asked for some support for their position, the defendants y indicated only that their objections were grounded in Rule 26 and the fact that Tandy Engineering

3

was a "consulting expert." (*Motion to Compel*, at 2). Plaintiff then filed his motion to compel, and the defendants filed their response and requested a protective order as to Tandy Engineering.

## II.
## ANALYSIS

### A.
### Mr. Burkybile Has Not Demonstrated He Is Entitled To Discovery From Defendant's Non-Testifying Expert

In criminal cases, the government has a constitutional obligation to disclose test results (or any other evidence) favorable to a defendant. *Brady v. Maryland*, 373 U.S. 83 (1963). There is no comparable obligation imposed on parties in civil cases where the evidence would derive from a non-testifying expert. Indeed, Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure "forbids the judge to order disclosure in pretrial discovery of the facts found or opinions formulated by an opponent's non-testifying experts except (so far as relevant to this case) 'upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'" *Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996)(parenthesis in original).[1] There is no dispute that Tandy Engineering was retained as a consulting expert, and no one from that firm will be testifying.[2]

---

[1] The Rule provides in pertinent part:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial... upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

[2] Whether the results of Tandy Engineering tests were adverse to the defendants' case is of no moment. The protection of the non-testifying expert under Rule 26(b)(4)(B) is an end that the drafters of the Rule concluded justified non-discoverability. *See Braun*, 84 F.3d at 236 ("The underlying rule, that of nondisclosure, invites shopping for favorable expert witnesses and facilitates the concealment of negative
(continued...)

4

The party seeking discovery from the non-testifying expert consulted in anticipation of litigation "carries a heavy burden in demonstrating the existence of exceptional circumstances." *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F.Supp.2d 1148, 1151 (N.D.Ill. 2001); 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2032 (2d ed.1994). Generally, "exceptional circumstances" will be found to exist when: (1) the condition observed by the expert is no longer observable; or (2) the condition is subject to replication, but the costs would be judicially prohibitive. *See, e.g., Braun v. Lorillard, Inc.*, 84 F.3d 230, 236 (7th Cir.1996).

Mr. Burkybile argues that he needs facts regarding the history of the test vehicle, its modifications, and the results of any test performed on it before it came into Mr. Holcomb's possession. There is no dispute that plaintiff had the opportunity to depose Mr. Holcomb, the expert who employed Tandy Engineering's test vehicle in his tests or that the defendants will not be utilizing any of the tests Tandy Engineering performed on the vehicle. Although the defendants have made the test vehicle available for plaintiff's inspection, the plaintiff has inexplicably chosen not to take advantage of that availability. There is no claim that the deposition of Mr. Holcomb was inadequate to reveal what was done by Tandy to the vehicle or was in any other way insufficient to enable Mr. Burkybile's counsel to obtain information about what was done to the test vehicle.[3]

---

[2](...continued)
test results. That is neither here nor there; the exception is a narrow one."); *Spearman Industries*, 128 F.Supp.2d at 1152 ("perfectly permissible" for party to choose not to use expert because of an adverse opinion)

[3] While the defendants are free to invoke Rule 26(b)(4)(B), there may (or there may not) be issues about the admissibility of Mr. Holcomb's testimony at trial should he attempt to rely on what Tandy Engineering told him was done to the vehicle. While Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the "mouthpiece" of the witnesses on whose statements or opinions the expert's opinion necessarily rests. *See Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
(continued...)

Nonetheless, the plaintiff insists that an inspection of the vehicle by experts of his choosing is not an adequate substitute for detailed information on the test vehicle from Tandy Engineering.

These circumstances are not the kinds of "exceptional" circumstances that require the production of information from the defendants' non-testifying consultant. (*Plaintiff's Reply Memorandum*, at 7). Neither *Eliasen v. Hamilton*, 111 F.R.D. 396, 397 (N.D.Ill. 1986) nor *Portis v. City of Chicago*, No. 02-3139 (N.D.Ill. Aug. 24, 2005), an unpublished memorandum opinion and order support the contention. In *Eliasen*, the plaintiff hired two experts, one to testify and one as a consultant. The consultant prepared a report that the testifying expert employed. The defendants were able to obtain the report in discovery, but were not able to depose the consultant about his preparation of the report. The court held that Rule 26(b)(4)(B) was designed to prohibit exactly that kind of discovery. 111 F.R.D. at 401-02. The same principle applies here. Plaintiff has access to the vehicle – as the defendant in *Eliasen* had access to the report – and may inspect it as he pleases. Thus, in both instances, there is a "different avenue" to the information used by the testifying expert. 111 F.R.D. 399-400. As a result, "exceptional circumstances" were not demonstrated in *Eliasen* and cannot be demonstrated here.

In *Portis*, the plaintiffs engaged a computer expert to create a computer database of information regarding the arrests of class members in that case. When the defendant sought production of the database during discovery, the plaintiffs objected on work product grounds. The court overruled the plaintiffs' objection and, in so doing, cited several factors that it felt constituted "undue hardship" to the defendant and lack of prejudice to the plaintiffs. As to the defendant, the

---

[3](...continued)
285 F.3d 609, 613 (7th Cir. 2002); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646 (N.D.Ill. 2006).

court noted the cost of recreating the database from scratch would be about $90,000, and that access to the database would significantly ease the task of confirming the class list and materially advance the litigation without significant prejudice to the plaintiffs. *Portis, v. City of Chicago*, No. 02-3139, 2004 WL 1535854, *4 (N.D.Ill. July 7, 2004). As for the plaintiffs, the court found that, since they originally sought to collaborate with the defendant on the database, they would not be unduly prejudiced by sharing it with the defendant, provided they were fairly compensated for their extensive work. *Id.* The court found that the defendant could not reproduce the database without undue hardship and granted the defendant access to the database provided expenses were shared.

As discovery progressed, the defendant sought to depose the computer consultant who had created the database. The plaintiffs did not object to the deposition, but wanted to limit the scope of the questioning. *Portis*, *Slip op.* at 12. The court found that because the plaintiffs would be using the actual database in their case-in-chief at trial, the defendant was entitled to explore the preparation of the database at the deposition of the computer consultant. *Id.* The court relied upon *Pearl Brewing Co. v. Schlitz Brewing Co.*, 415 F.Supp. 1122 (S.D.Tex. 1976) and *Derrickson v. Circuit City Stores, Inc.*, No. 95-3296 (D.Md. Mar. 19, 1999), two other computer databases cases in which courts found that details of the data compilation and formulation of computer systems could not be gained from any other source. *Id.*

What these cases said of the complexity of recreating a computer database cannot be said of the automobile in this case. In *Grindell v. American Motors Corp.*, 108 F.R.D. 94, 95 (W.D.N.Y. 1985), the court quashed a subpoena for a non-testifying expert whom the defendant retained to evaluate tests performed on vehicles involved in products liability litigation. In applying Rule 26(b)(4)(B), the court held that the plaintiff had not shown exceptional circumstances and explained

7

that the plaintiffs were free to hire their own experts to examine the vehicles. 108 F.R.D. at 95. Similarly, in *Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13 (W.D.N.Y. 1982), the plaintiffs sought to depose three experts in the field of vehicular testing who, under contract with defendants, performed experiments with the vehicle in question and similar vehicles. The court found that the plaintiffs failed to show exceptional circumstances under Rule 26(b)(4)(B) in part because they had access to models of the vehicle in question with which further tests and studies could be conducted. 96 F.R.D. at 14. That means the material considered by the defendants' testifying expert is sufficiently available to the plaintiff – the scope of discovery allowable under the rule does not go beyond the scope of material considered by the testifying expert. *Eliasen*, 111 F.R.D. at 399. The plaintiff here has the same access that was available in both *Grindell* and *Hermsdorfer*.

Of course, any testing takes time and money. But the plaintiff has not argued that these expenditures would be prohibitive. *See Braun*, 84 F.3d at 236. He simply argues that an inspection will not be as good as simply obtaining the information he wants from the defendants' non-testifying expert. (*Plaintiff's Reply Memorandum*, at 7). Why that is true is not explained. Moreover, Rule 26(b)(4)(B) was designed in part to prevent a party from building his own case by means of his opponent's financial resources, superior diligence, and more aggressive preparation. *Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 502 (10th Cir. 1980); *Sunrise Opportunities, Inc. v. Regier*, No. 05-2825, 2006 WL 581150, *7 (N.D.Ill. Mar. 7, 2006); *Eliasen*, 111 F.R.D. at 401.

In the instant case, the plaintiff inexplicably has not availed himself of the opportunity to examine the test vehicle about which he claims the urgent need to secure information. Consequently, Mr. Burkybile's argument is unpersuasive. There simply are not exceptional circumstances requiring

discovery from the defendants' non-testifying expert regarding the tests it ran on the vehicle that was purchased for evaluative purposes. Of course, as a policy matter, one may take issue with Rule 26(b)(4)(B). But that is the rule in the federal courts and it is not for judges to find ways to circumvent its clear prohibitions. *Compare* Frankfurter, *John Marshall and the Judicial Function*, in Government Under Law, 31 (1956).

## B.
## The Plaintiff Is Entitled To Limited Discovery Of
## Documents Pertaining To Defendants' Warranty Claim Information

On March 16, 2006, the parties appeared before Chief Judge Holderman regarding the negligent recall count in the amended complaint, an anticipated motion to dismiss that count, and a possible extension of discovery to address that new count. (*Defendants' Motion for Protective Order*, Ex. A, Transcript of 3/12/06, at 2). Judge Holderman indicated that there had been more than one recall, and that defendant Mitsubishi took it upon itself to engage in the recall. (*Id.*).[4] Judge Holderman then explained his position on additional discovery:

> I am not saying that all the discovery will be ordered if there is continued objection by defense counsel, and I actually think that defense counsel has been very reasonable in its approach at this point . . . but I am going to allow discovery to proceed in connection with this recall, the now pending recall count, until I rule on the motion, because I don't think it is going to be that much of an added burden.

(*Id.* at 3). The parties then agreed that there could be no claim for a failure to recall, but that once a recall was undertaken, as the judge put it, "a different set of rules may apply." (*Id.* at 5).

Defense counsel then expressed his concern that the plaintiff, in fact, had failed to adequately plead that a recall had been undertaken. (*Id.* at 5-6). Judge Holderman, however, reminded defense counsel that notice pleading applied and that if there were any facts that could support a claim the allegations would be adequate. (*Id.* at 6). Thus, if the warranty claims relate to actions taken once the recall was undertaken, they might be relevant. (*Id.* at 6). Defense counsel continued to protest relevance, however, and stated that the plaintiff claimed he never even received a recall notice. (*Id.*

---

[4] Count IV charged that there had been three recall campaigns.

at 7).[5]  But the court explained:

> That may be an issue to be decided at the trial, but in the discovery context, relevance is a little -- you know, it is broader. And so the fact that it may not matter at the trial with regard to this plaintiff, it doesn't mean it may not be discoverable.
>
> So given our discussion here, I am going to adopt the plaintiff's schedule. (*Id.* at 7).

The court expressed the hope that the parties were now informed of what the proper scope of discovery was, and indicated he would refer the matter here and that any further problems with discovery parameters could be addressed at that time. (*Id.* at 7).

The defendants continue to maintain that the discovery requests are not relevant, although Chief Judge Holderman has already clearly determined they are – at least to some degree. The defendants also argue that the requests are untimely, although Judge Holderman extended discovery, at least in part, for the purpose of discovery into the warranty claims. Finally, the defendants submit that the requests are unduly burdensome.

The defendants maintain the same objections in their combined motion for protective order/response to plaintiff's motion to compel that they originally interposed to plaintiff's document requests regarding warranty information:

> Objection. This Request is vague, ambiguous, overly broad, unduly burdensome, oppressive and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence since the Request is not limited to the issues in this case, to a reasonable and relevant time frame, not limited to the model vehicle involved in this case, and not limited to incidents with facts substantially similar to the incident in this case. This Request goes beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of

---

[5] Paragraph 16(c) of Count IV charged that Mitsubishi had failed to act reasonably in that it had failed to take steps to insure that the current owners of the recalled vehicles were properly notified of the recall campaign and the consequences of failing to have the lower control arm and ball joint inspected. The amended complaint alleged that Mr. Burkybile had not received notice of the recall.

11

defendants' experts. [Defendants] also object[] to the extent that this Request seeks documents that are protected by the attorney-client privilege or the attorney work product doctrine. Further, [defendants] object[] to the extent Plaintiff seeks claimants' confidential and private information.

*(Defendants' Motion for a Protective Order, at 8-9).*

Rule 34(a), Federal Rules of Civil Procedure, provides that a party may request, among other things, the production of documents that "constitute or contain matters within the scope of Rule 26(b) . . . ." Both the text of Rule 26(b) and the decisions interpreting it attest to the extraordinary breadth of discovery in the federal courts: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1). *See Clark v. Experian Information Solutions, Inc.*, 2006 WL 931677 at *3 (N.D.Ill. 2006)(Holderman, J.).

If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper. *See* Rule 34(b); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 337 (N.D.Ill. 2005). That burden cannot be met by a reflexive invocation of "the same baseless, often abused litany" that the requested discovery is "vague, ambiguous, overly broad, unduly burdensome" or that it is "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Swift v. First USA Bank*, No. 98-8238, 1999 WL 1212561 (N.D.Ill. Dec.15, 1999). Despite court's repeated admonitions that these sorts of "boilerplate" objections are ineffectual,[6]

---

[6] *See In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295 (N.D.Ill. 1997)(rejecting generic, non-specific, boilerplate objections); *Klein v. AIG Trading Group Inc.*, 228 F.R.D. 418, 424 (D.Conn. 2005)(overruling objections that consisting of "the familiar litany that the [requests] are
(continued...)

12

their use continues unabated, with the consequent institutional burdens, *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987); *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 386 (7th Cir. 1996), and the needless imposition of costs on the opposing party.

Here, as to plaintiff's warranty claim requests, the defendants discuss only their objections as to relevance, timeliness, and undue burden. Their remaining objections are overruled as unsupported.

### 1.
### Warranty Claims Relating To Action Taken
### Once The First Recall Was Undertaken Are Relevant

The dispute over the relevance of plaintiff's warranty claim document requests stems from their different understandings of Judge Holderman's statements at the March 16, 2006 hearing. Defendants argue that, based on Judge Holderman's comments, plaintiff's request for all documents reflecting claims made under warranty from 1993 until 2004 are irrelevant. The defendants submit that, even under a negligent recall theory, the only arguably relevant warranty claim information would be limited to those claims from the time of the first recall in 1999 until the time of the accident in 2004. (*Defendants' Motion for Protective order*, at 9-10). According to the plaintiff, however, Judge Holderman opened the door to all discovery of warranty claim information. (*Plaintiff's Reply Memorandum*, at 4).

---

⁶(...continued)
burdensome, oppressive or overly broad"); *American Rock Salt Co., LLC v. Norfolk Southern Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2005)("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable"); *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190-91 (D.D.C.1998) (rejecting general boilerplate objections). Defendants must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each discovery request is not relevant or is overly broad, burdensome or oppressive. *Roesberg v. Johns-Mansville Corp.*, 85 F.R.D. 292, 297 (E.D.Pa.1980); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984); *Klein v. AIG Trading Group Inc.*, 228 F.R.D. 418, 422 (D.Conn. 2005).

13

At the hearing, there was no dispute that there could be no claim for a failure to recall, but that once a recall was undertaken, "a different set of rules may apply." (*Id.* at 5). *See Modelski v. Navistar Intern. Transp. Corp.*, 302 Ill.App.3d 879, 890, 707 N.E.2d 239, 247 (1st Dist. 1999)("a manufacturer is under no duty to issue post-sale warnings or to retrofit its products to remedy defects first discovered after a product has left its control.").[7] Hence, warranty claims preceding the first recall of the vehicles in question in 1999 would not be relevant to plaintiff's negligent recall claim under *Count IV of the amended complaint.*[8] Judge Holderman said as much at the hearing on March 1st:

> So your theory with regard to the warranty claims at this point, the way you have articulated it, if it goes to the reasonableness of having a recall, really aren't relevant; but if they relate to the action taken once the voluntary recall was undertaken, then you might have a theory. (Transcript of 3/12/06, at 6).

Our's is a hierarchical system and the decisions of superior courts are binding on inferior courts. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1092 (7th Cir. 2004). Thus, in light of Judge Holderman's observations, the only warranty claims relevant for present discovery purposes are those that relate to actions taken once the recall was undertaken in 1999.

In arguing to the contrary, plaintiff not only ignores Judge Holderman's pronouncement on the issue, but misinterprets his indication that warranty claims might be relevant, even if plaintiff had not received a recall notice. This statement was in response to defense counsel's question of how

---

[7] Despite Judge Holderman's instruction to the parties that they "cite cases . . . on this particular area of the law," neither party has done so. (*Defendants' Motion for a Protective Order*, at 7-12; *Plaintiff's Reply Memorandum*, at 4-6). To paraphrase Judge Easterbrook in a similar context: "What do the [Illinois] courts themselves say on this subject [of negligent recall]? It is not our job to do the legal research that [the parties] ha[ve] omitted. Claims under state law have been forfeited." *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005). *Accord Davis v. Carter*, _F.3d_ (June 28, 2006 7th Cir.).

[8] Documents evidencing complaints by Eclipse owners regarding the particular part involved in the instant case are relevant to other counts of the amended complaint. But discovery on those counts is closed.

14

any warranty claims could be relevant if the plaintiff claimed he never received a notice. (Transcript of 3/12/06, at 7). Given the context of the comment, it cannot be interpreted to mean that warranty claims from any time period are relevant. (*Plaintiff's Reply Memorandum*, at 4-5). That interpretation would be nonsensical and would make the balance of Judge Holderman's observations meaningless. "Judges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *Cf. Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring and dissenting in part). The rule applies to oral rulings or observations no less than to formal, written opinions.

## 2.
## Plaintiff's Limited Discovery Requests Are Not Unduly Burdensome

The defendants argue that they have already provided the plaintiff with the warranty information from the period for 1999 on. In response to plaintiff's First Supplemental Requests for Production issued and answered a year ago, in May 2005, the defendants produced Quarterly Non-Compliance Reports submitted to NHTSA. According to the defendants, the information plaintiff seeks is in those Quarterly Reports. (*Defendants' Motion for Protective Order*, at 10; Ex. B).

Beyond that, defendants submit that requiring them to find each and every document during an 11-year time frame "reflecting claims" for in excess of 552,000 Mitsubishi vehicles, would be an undue burden. Over 362,000 vehicles had the lower lateral arm ball joints inspected or replaced under the recall, so even if each warranty claim consists of only one page, over 362,000 pages of documents would exist. In addition, over 700,000 Chrysler vehicles were also affected by the recall, bringing the total number of affected vehicles to well over 1,000,000. (*Defendants' Motion for Protective Order*, at 11-12).

15

The plaintiff concedes that such a production would indeed be burdensome. He is, nonetheless, unsatisfied with the reports to the NHTSA. Instead, he asks that the defendants produce reports and data compilations which summarize, analyze, or categorize the basic warranty information [Request 2] and any documents that were utilized to compile the quarterly reports submitted to NHTSA for the three recalls at issue [Request 3]. (*Plaintiff's Reply Memorandum*, at 6). As plaintiffs suggest, it is likely that there was some compilation or summarization of information pertaining to the warranty claims, which allowed defendants to compile the quarterly reports. Accordingly, defendants shall produce any such summaries, abstracts, or data compilations for the relevant time period beginning in 1999.

### 3.
### The Plaintiff's Discovery Requests Are Timely

The defendants also argue that the requests for warranty information are untimely because discovery closed on January 31, 2006. (*Defendants' Motion for protective Order*, at 10). But discovery was reopened once plaintiff amended his complaint to add a negligent recall count. Judge Holderman indicated that the scope of that extended discovery included warranty claims relating to actions taken once the 1999 recall was undertaken. (Transcript of 3/12/06, at 6). So the discovery requests here, occurring well before the new deadline of August 25th, are clearly timely. Defendants' reliance on *Lake v. Fairview Nursing Home, Inc.*, 151 F.3d 1033, 1998 WL 446662 (7th Cir. July 15, 1998), is mystifying. Apart from the fact that the citation of the case violates Seventh Circuit Rule 53(e), there was no extension of the discovery deadline in that case.

### C.
### Defendants Must Respond To Requests To Admit And Document Requests Regarding Statements By Corporate Officers At The February 15, 2001 News Conference

Plaintiff tendered Requests to Admit to the defendants which contained eight separate items

16

regarding statements allegedly made by two high-ranking corporate officers of Mitsubishi Motors Corporation at a news conference on February 15, 2001. (*Plaintiff's Motion to Compel*, Ex. 3). Plaintiff also submitted a separate request for production of any documents or recordings that the defendants may have containing a verbatim rendition of those statements. (*Plaintiff's Motion to Compel*, Ex. 2, request 4). The plaintiff identified the news conference by date, by participants – Takashi Sonobe and/or Akira Okamoto – and by news articles reporting on the conference that plaintiff attached to both the Requests to Admit and the Request to Produce Documents. In those news articles, it was reported that Mr. Takashi, then Mitsubishi Motors CEO, called a second recall of certain vehicles for loose parts on a joint in the front suspension "a truly shoddy setup that deserves criticism." Mr. Akira Okamoto, executive officer in charge of quality, was reported to have said officials checking for defects mistakenly assumed they arose only on the assembly line. (*Plaintiff's Motion to Compel*, Exs. 2(A); 3(A-B)).

In response to the Rule 34 document request, defendants indicated they were aware the two gentlemen were employees at that time, but were unaware of any recording or transcription containing a verbatim rendition of their comments at the news conference. They also objected to the request as "overly broad, unduly burdensome, unreasonable as to time and scope, and seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (*Plaintiff's Motion to Compel*, Exs. 8-10).

In response to the requests to admit, the defendants admitted that the two gentlemen did, in fact, hold the positions of CEO and executive officer in charge of quality control on the date in question. But in response to requests asking whether the statements were made and whether they applied to the recalls at issue here, the defendants again generally objected to the remaining request

17

to admit as "vague, ambiguous, seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (*Id.*).[9]

The defendants' response to the motion to compel does not elaborate on their boilerplate objections. (*Defendants' Motion for Protective Order*, at 12). Consequently, for the reasons discussed earlier, those objections are overruled. *See also O'Connor v. AM General Corp.*, No. 85-6679, 1992 WL 382366 at *2 (E.D.Pa. Dec. 7, 1992)("The court may reject unjustified objections and order answers, and determine that, as to answers deemed non-compliant, either the matter be deemed admitted or an amended answer be served."); *Booth Oil Site Administrative Group v. Safety-Kleen Corporation*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000)(same).

Defendants do, however, state that they will review and supplement their answers with regard to the news conference statements. (*Defendants' Motion for Protective Order*, at 12). While it is possible that the defendants do not have any verbatim recordings or transcripts of the statements at issue, they must provide the plaintiff with a definitive answer as to whether they do. As for the requests to admit, the defendants must respond. Failure to properly respond to those requests to admit will result in them being deemed admitted under Rule 36. *Laborers' Pension Fund v. Blackmore Sewer Const., Inc.*, 298 F.3d 600, 605 (7th Cir. 2002); *United States v. Kasuboski*, 834

---

[9] The defendants' essentially boilerplate objections are: "This Request is vague, ambiguous, over broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence since the Request is not limited to the vehicle or issues in this case, or to the reasonable and relevant time frame. [Defendants] also object[] to this Request because it is unduly burdensome, oppressive, and harassing since it seeks to have [defendant] verify if statements were made over five years ago, and seeks to have [defendant] verify the specific content of those alleged statements, as well as the context in which the alleged statements were made. Further, this Request goes beyond the Court's limited purpose for reopening discovery, which was to allow plaintiff to conduct discovery solely on the issue of the alleged negligent recall and for purposes of rebuttal of defendants' experts."

(*Plaintiff's Motion to Compel*, Exs. 5-7, requests 3-8).

F.2d 1345, 1350 (7th Cir.1987).

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion to Compel [#54] is GRANTED in part and DENIED in part. The defendants' Motion for a Protective Order as to Tandy Engineering [#57] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 8/2/06